1  Matt Olavi (Bar No. 265945)
   molavi@olavidunne.com
2  Brian J. Dunne (Bar No. 275689)
3  bdunne@olavidunne.com
   **OLAVI DUNNE LLP**
4  800 Wilshire Blvd., Suite 320
5  Los Angeles, California 90017
   Telephone: (213) 516-7900
6  Facsimile: (213) 516-7910
7
8  *Attorneys for Defendant ECLIPSE IP LLC*
9

10             **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  THE ECLIPSE GROUP, LLP,              ) Case No. 3:13-cv-1902-JAH-BGS
14                                       )
                                         )
15             Plaintiff,                ) **DECLARATION OF MATT OLAVI**
                                         ) **IN SUPPORT OF ECLIPSE IP LLC'S**
16       v.                              ) **MOTION FOR SANCTIONS**
                                         )
17  ECLIPSE IP LLC,                      )
18                                       )
             Defendant.                  )
19                                       )
                                         )
20                                       )
                                         )
21                                       )
                                         )
22  _____ )
23
24
25
26
27
28
                                    Case No. 3:13-cv-1902-JAH-BGS
                     **DECLARATION OF MATT OLAVI**

1    I, Matt Olavi, hereby declare as follows:

2    1.    I am an attorney licensed to practice in the State of California and a partner at

3    Olavi Dunne LLP in Los Angeles, California.

4    2.    Except as stated herein, I have personal knowledge of the facts stated in this

5    declaration and if called as a witness, would testify competently to those facts.

6    3.    Attached hereto as Exhibit 1 is a true and correct copy of an email chain

7    between me, Edward O'Connor, and several other attorneys at The Eclipse Group.

8    4.    Attached hereto as Exhibit 2 is a true and correct copy of a Memorandum of

9    Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction,

10   filed by Stephen M Lobbin and Edward F. O'Connor of The Eclipse Group on May

11   24, 2013 in Case No. 13-cv-00734-JVS(ANx) in the United States District Court for

12   the Central District of California.

13   5.    Attached hereto as Exhibit 3 is a true and correct copy of a Memorandum of

14   Points and Authorities in Support of Plaintiff's Renewed Motion for Preliminary

15   Injunction, filed by Stephen M Lobbin and Edward F. O'Connor of The Eclipse

16   Group on July 19, 2013 in Case No. 13-cv-00734-JVS(ANx) in the United States

17   District Court for the Central District of California.

18   6.    Attached hereto as Exhibit 4 is a true and correct copy of the Memorandum of

19   Points and Authorities In Support of Eclipse IP LLC's Notice of Motion and

20   Motion for Sanctions that I served on The Eclipse Group on May 23, 2014.

21

22   I declare under penalty of perjury that the foregoing is true and correct.

23   Executed in Los Angeles, California on this 9th day of June 2014

24

25

26   _____

27   Matt Olavi

28

1                          Case No. 3:13-cv-1902-JAH-BGS
**DECLARATION OF MATT OLAVI**

# Exhibit 1

**Subject:** Re: Eclipse Group v. Eclipse IP

**Date:** Wednesday, April 9, 2014 at 8:30:36 AM Pacific Daylight Time

**From:** Matt Olavi

**To:** Ed OConnor

**CC:** Jennifer Hamilton, Stephen M. Lobbin, Francisco Rubio-Campos, Gregory Gulliver

Hi Ed,

We have had a fairly cordial relationship so far, so I am not sure why you have become so hostile all of a sudden. I tried to have a conversation with you about this. You gave me your number and told me to call anytime (see the attached email chain.) But, I called you 3 times and you didn't answer my calls, so I sent the email below (almost two weeks ago, I might add).

I did, in fact, go to law school and I never said that Eclipse IP LLC intended to sue you or any such thing. In fact, I can confirm to you that Eclipse IP has absolutely no intention to sue you (that would, as you indicated, be ridiculous). I don't understand why you would come to that conclusion based upon my email below. But, without entering the debate about which of us went to law school, I would point out that, as most law students learn, parties may seek to recover costs and fees incurred in responding to frivolous motions that vexatiously multiply the proceedings under Rule 11, Section 1927, and/or the Court's inherent authority without the need to file additional lawsuits. Certain of these only permit the recovery against the lawyers and others the client, although I suppose that in this case, that is a distinction without a difference.

As I told you, based upon your Motion and the MPA in support, I think the Motion is frivolous and wanted to discuss it with you (frankly, I am glad that you have CC'ed other partners at your firm so that they can see the caliber of briefs being filed on behalf of The Eclipse Group). For example, In the MPA in Support of the Motion for Preliminary Injunction, you include a single legal citation to *Winter* (listing the four factors that the movant must establish by a "clear showing" for a PI), then you fail to say anything about two of the four factors (irreparable harm and that the public interest in an injunction). When you file a half-cocked motion that has absolutely no chance of success, we still have to waste time and effort in opposing it, and if the case law supports it, we intend to seek recovery of the costs and fees incurred to do so.

I am not making inane threats. To clarify – even though I disagree with them – I don't believe that your Complaint is frivolous and I don't believe that your asserted causes of action are frivolous. I do, however, believe that your PI Motion is frivolous (and with an MPA that is only 1.5 pages long, I think most lawyers would tend to agree). I would be more than happy to discuss this with you in a calm, professional way, and would appreciate it if you would refrain from lashing out at me in the future. It is unbecoming. Are you available at any time next Monday?

Separately, if you or any of the other partners you have CC'ed here would like to discuss a potential resolution of this case, I think it would be helpful – as I don't think that continuing this litigation is in anyone's bests interests. I am generally available for the rest of this week. If any of y'all are interested, please let me know when you're available and we can set up a call.

Kind regards,
Matt

---

**From:** "efo@eclipsegrp.com" <efo@eclipsegrp.com>
**Date:** Tuesday, April 8, 2014 at 4:47 PM
**To:** Matt Olavi <molavi@olavidunne.com>
**Cc:** Jennifer Hamilton <jhh@eclipsegrp.com>, "sml@eclipsegrp.com" <sml@eclipsegrp.com>, Francisco Rubio-Campos <frc@eclipsegrp.com>, Gregory Gulliver <gbg@eclipsegrp.com>
**Subject:** RE: Eclipse Group v. Eclipse IP

Happy to discuss, but your inane threats don't help the dialog. If you have legal arguments tell me and I'll consider them-no one is trying to harass your client-tell them to stop filing cases using our mark and we'll withdraw the motion- You are going to sue us personally? Did you go to law school?

Edward F. O'Connor

**THE ECLIPSE GROUP LLP**
550 West C Street, Suite 2040
San Diego, CA 92101

t: 619.239.4340
f: 619.239.0116
efo@eclipsegrp.com
www.eclipsegrp.com

**CONFIDENTIALITY NOTICE:** This message is being sent by or on behalf of a lawyer. It is intended for the exclusive use of the individual or entity that is the named addressee and may contain information that is privileged or confidential, or otherwise legally exempt from disclosure. If you are not the named addressee or an employee or agent responsible for delivering this message to the named addressee, you are not authorized to read, print, copy, retain or disseminate this message or any part of it. If you have received this message in error, please notify us immediately by e-mail, by telephone at 949.851.5000, or by facsimile at 949.851.5051, and discard any paper copies of this message.
**TREASURY NOTICE:** As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not written or intended to be used (and cannot be used) by any taxpayer for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code.

**From:** Matt Olavi [mailto:molavi@olavidunne.com]
**Sent:** Friday, March 28, 2014 2:01 PM
**To:** Ed OConnor
**Subject:** Re: Eclipse Group v. Eclipse IP

Hey Ed,

I tried you a few times today, but your cell phone is going straight to voicemail.  Basically, I am calling to ask you to withdraw your PI Motion.

I have been through the Motion and the attached declarations and find absolutely no basis to support your requested relief.  Your discussion of the factors for granting a preliminary injunction and how those factors apply to this case is half a page long and doesn't contain any facts and includes a single legal citation to *Winter* (identifying the factors for a PI).  The Hamilton Declaration is nearly identical to the Declaration included in your Opposition to Eclipse's Motion to Dismiss, your Declaration simply attaches a number of random printouts from DocketNavigator and various websites, and neither even suggests that the Eclipse Group is entitled to the requested injunction.

I think the PI Motion is baseless and that it was filed for an improper purpose – to harass Eclipse IP and to burden it by forcing it to respond to a meritless motion.  As a professional courtesy, I just wanted to let you know that if Eclipse IP is forced to respond, it presently intends to seek to recover the costs and fees incurred from yourself, Mr. Lobbin, Ms. Hamilton and/or your firm as a whole.  If you would like to discuss this further or explain the basis for your belief that the Eclipse Group is entitled to the requested relief in greater detail, please let me know and I will make myself available.

Kind regards,

Matt Olavi  | Olavi Dunne llp | 800 Wilshire Blvd., Suite 320, Los Angeles, CA, 90017
Direct: +1.213.516.7902 | Main Phone: +1.213.516.7900 | Main Fax: +1.213.516.7910 | E-mail:
molavi@olavidunne.com
NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** "efo@eclipsegrp.com" <efo@eclipsegrp.com>
**Date:** Friday, March 28, 2014 at 3:29 AM
**To:** Matthew Olavi <molavi@olavidunne.com>
**Subject:** RE: Eclipse Group v. Eclipse IP

Sure. Call me any time 949 291 3894

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: Matt Olavi
Date:03/27/2014 5:43 PM (GMT-08:00)
To: Ed OConnor
Subject: Eclipse Group v. Eclipse IP

Hey Ed,

I hope all is well.  Do you have some time tomorrow to discuss the PI motion that you guys filed today?

Thanks,

Matt Olavi  |  Olavi Dunnellp | 800 Wilshire Blvd., Suite 320, Los Angeles, CA, 90017
Direct: +1.213.516.7902 | Main Phone: +1.213.516.7900 | Main Fax: +1.213.516.7910 | E-mail:
molavi@olavidunne.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# Exhibit 2

Stephen M. Lobbin (SBN 181195)
sml@eclipsegrp.com
Edward F. O'Connor (SBN 123398)
efo@eclipsegrp.com
**THE ECLIPSE GROUP LLP**
2020 Main Street, Suite 600
Irvine, California 92614
Tel: 949.851.5000
Fax: 949.851.5051

Attorneys for Plaintiff **The AnTerra Group, Inc.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **The AnTerra Group, Inc.**, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>**KiVAR Chemical Technologies**, a California entity, and **Richard Varley**, an individual,<br><br>Defendants. | Case No. SACV 13-734 JVS (ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: June 24, 2013<br>Time: 1:30 p.m.<br>Crtrm: 10C<br><br>Honorable James V. Selna |

Pursuant to Local Rule (C.D. Cal.) 7-5(a), Plaintiff The AnTerra Group, Inc. ("AnTerra") respectfully submits this Memorandum of Points and Authorities in support of AnTerra's Motion for Preliminary Injunction.

## I.    INTRODUCTION AND SUMMARY

By this Motion in this patent and trade secret action, AnTerra submits that the requested preliminary relief is justified as against Defendants Richard Varley and

his company KiVAR Chemical Technologies (collectively "Varley"), in view of the incontrovertible facts and the apposite case law.

First, as an ex-employee who improperly retained documents and information which constitutes AnTerra's privileged attorney-client communications and confidential customer and technical trade secret information, and who now threatens to disclose these privileged documents and confidential information, Varley should be enjoined from doing so because it would vitiate the attorney-client privilege and trade secrets and harm AnTerra irreparably. Second, because Varley's counsel already has reviewed the privileged materials, and moreover has communicated the same threat to disclose improperly the privileged documents, this Court should order Varley's counsel disqualified from this action. Third, because Varley has admitted his actions of ongoing infringement of AnTerra's U.S. Patent No. 8,420,143 ("the '143 patent") issued on April 16, 2013, Varley should be enjoined from further blatant infringement pending the resolution of this action.

Therefore, AnTerra requests that this Court issue a preliminary injunction that (a) compels Varley to return all AnTerra attorney-client privileged documents and AnTerra confidential business information in Varley's possession, (b) disqualifies Varley's counsel from representing Varley in this action, and (c) enjoins Varley from any further infringement of AnTerra's '143 patent.

## II. INCONTROVERTIBLE FACTUAL BACKGROUND

The key facts relevant to this Motion are mostly uncontroverted, as detailed in AnTerra's Complaint (*see* Docket No. 1), the admissions in Varley's Answer and Counterclaims (*see* Docket No. 5), and the testimony and exhibits submitted herewith.

AnTerra is a small engineering and technical consulting firm in Laguna Hills, having at most only 10 employees. *See* Complaint ¶ 4; Terranova Decl. ¶ 2. For many years, AnTerra has been a leader in the business of supplying innovative, industry-leading products, services and solutions to customers in the food

processing, industrial and municipal markets, particularly concerning water systems for washing and sanitization. *See* Complaint ¶ 7; Terranova Decl. ¶ 3. Through much time, expense, and inventive effort in the years leading up to and including 2008, AnTerra's founder and President Anthony Terranova developed a proprietary carbon dioxide gas dispersion system and method for use in washing and sanitizing post-harvest organic fruits and vegetables, by which method the typically-chlorinated wash water normally used may be "sparged" with carbon dioxide ($CO_2$), which replaces the typical organic acids used (such as citric acid), in a manner that results in maintaining a desired pH value of about 6.5 to 7. AnTerra calls this invention and technology "the Genesis System." *See* Complaint ¶ 8; Terranova Decl. ¶ 4. After filing a patent application for the Genesis System in 2008, the '143 patent-in-suit issued to AnTerra a few weeks ago on April 16, 2013. *See* Complaint ¶ 9 ('143 patent attached); Terranova Decl. ¶ 5, Ex. 1.[1]

Defendant Richard Varley was AnTerra's employee for over 8 years until July 2011. During his entire period of employment, Varley was paid a salary by AnTerra which was reported as W-2 income. *See* Complaint ¶ 10; Answer ¶ 10 (Varley's admission); Terranova Decl. ¶ 6. Varley's job responsibilities included being technically knowledgeable concerning AnTerra's products and services, and interfacing with AnTerra's customers, much of the time on-site at the customers' facilities. As with any employee, AnTerra provided Varley with all of the equipment and materials necessary to carry out his job responsibilities, including an Apple desktop computer system and an e-mail account "@anterragroupinc.com." *See* Complaint ¶ 10; Answer ¶ 10 (Varley's admission); Terranova Decl. ¶ 7. Because Varley was one of only a few AnTerra employees, and because his duties included important technical sales and service functions, on occasion he was given

---

[1] Exhibits 1-3 are attached to the Declaration of Anthony Terranova, and Exhibits 4-5 are attached to the Declaration of Stephen M. Lobbin, both filed herewith.

the informal title of "Vice President." Though Varley was a capable technician, however, he did not have any formal technical education resulting in a Bachelors degree. *See* Complaint ¶ 10; Answer ¶ 10 (Varley's admission); Terranova Decl. ¶ 8.

Because AnTerra was and is a small company, Varley's job responsibilities also included assisting AnTerra's President Mr. Terranova on many projects related to AnTerra's business which required assistance of any kind, technical or otherwise. One of those projects was in the spring and summer of 2008, when Varley assisted Terranova in (1) setting up a demonstration of a prototype Genesis System at AnTerra's customer Earthbound Farms in San Juan Bautista, California, and (2) gathering and preparing technical background information for AnTerra's patent attorneys to use in AnTerra's patent application for the Genesis System, which was filed in August 2008. *See* Terranova Decl. ¶ 9. In performing the second task, Varley gathered and communicated technical background information directly to the patent attorneys on behalf of his employer AnTerra, at all times via privileged attorney-client communications (with the client clearly being AnTerra). *See id.*; Answer ¶ 11.

Years later in July 2011, Varley chose to leave AnTerra's employ and start his own business in direct competition with AnTerra. At the time Varley left AnTerra, Varley took with him the Apple desktop computer system, a pump, and AnTerra documents and other information, including whatever privileged, confidential and/or proprietary AnTerra documents, e-mails or files remained stored on that computer. *See* Terranova Decl. ¶ 10, Ex. 2 (letters from AnTerra to Varley requesting return of computer and pump improperly taken by Varley). Without any discovery yet from Varley, the extent of Varley's theft is not yet certain. The AnTerra privileged, confidential and/or proprietary information Varley took, however, certainly included customer information related to the Genesis System, e-

1   mail files including privileged communications between AnTerra and its patent

2   counsel, and proprietary technical information concerning the Genesis System. *See*

3   Terranova Decl. ¶ 11.

4        At the time Varley departed, AnTerra already had generated some initial

5   success in demonstrating the Genesis System to several customers, including

6   Boskovich Farms of Oxnard, California, Misionero Vegetables of Gonzales,

7   California, True Leaf Farms of San Juan Bautista, California, and Gills Onions of

8   Oxnard, California. Since that time, however, because Varley has been able to use

9   and sell the same Genesis System, he has harmed AnTerra's business by

10   undercutting AnTerra and taking away some of these customers, in particular

11   Boskovich and Misionero. At present, Varley continues to use and sell the Genesis

12   System in violation of AnTerra's trade secrets and the recently-issued '143 patent.

13   *See* Terranova Decl. ¶¶ 12-13.

14        Some of AnTerra's early success with the Genesis System was due to the

15   company's successful trade secret litigation against Earthbound Farms in 2009. *See*

16   Terranova Decl. ¶ 14. As an employee at the time, Varley assisted AnTerra in

17   prosecuting that lawsuit, including meeting with AnTerra's litigation counsel on

18   several occasions to assist with reviewing and organizing the relevant facts. Varley

19   was well aware of AnTerra's successful contentions in that case, and Varley was

20   even mentioned in the Complaint. *See id.* As the Complaint makes clear (which

21   Varley read in 2009), the Genesis System was and is ***AnTerra's*** intellectual property

22   (defined as "the AnTerra Technology"), ***not Varley's*** even in part, and the

23   application for the '143 patent was "filed . . . to protect ***AnTerra's exclusive rights***

24   to the inventions embodied in the AnTerra Technology." *See id.*, Ex. 3; *see also*

25   Counterclaim ¶ 18, Ex. B (acknowledging in 2008 document that Genesis System

26   proprietary to "AnTerra Group Inc.," not Varley individually).

27

28

MEM. IN SUPPORT RE MOT. FOR PRELIM
INJUNCTION
Case No. SACV 13-734 JVS (ANx)

Finally, in Varley's pre-litigation communications and its Answer and Counterclaim responding to AnTerra's Complaint, Varley admits several key facts. First, Varley admits that (a) he still possesses AnTerra privileged attorney-client documents and communications, (b) his counsel has reviewed these privileged documents and communications, and (c) Varley and his counsel plan to disclose and use them in this action. *See* Lobbin Decl. ¶ 2, Ex. 4 at 1 (counsel stating he has "reviewed documentation . . . [concerning] the development of the invention"); *id.* ¶ 3, Ex. 5 at 1 (counsel stating incorrectly that "Varley is a holder of the attorney-client privilege as to the technical material he communicated with [patent counsel] for . . . the patent application or the '143 patent"). Second, Varley admits that he continues to utilize the Genesis System with at least one of his customers. *See id.* ("I have just learned that AnTerra has been seeking royalties from at least one company making use of the invention disclosed in the '143 patent.").

## III.  VARLEY SHOULD BE ENJOINED FROM USING OR DISCLOSING ANTERRA'S PRIVILEGED COMMUNICATIONS AND CONFIDENTIAL TRADE SECRET INFORMATION

A preliminary injunction is warranted where a movant demonstrates likely success on the merits, likely irreparable harm, equities favoring the movant, and that a preliminary injunction is in the public interest. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011).

First, because it is clear from Varley's pre-litigation letters and pleadings that Varley possesses AnTerra's attorney-client privileged communications and intends to violate that privilege by disclosing some or all of those communications, a preliminary injunction on this ground is justified. *See California Consumers v. BMG*, 1997 U.S. Dist. LEXIS 20658, at *17 (N.D. Cal. Dec. 22, 1997) (affirming "preliminary injunction enjoining California Consumers from using a privileged letter that was inadvertently faxed to counsel for California Consumers") (citing *KL*

*Group v. Case, Kay & Lynch*, 829 F.2d 909, 918-19 (9th Cir. 1987)); *see also Henry v. IAC Interactive Group*, 2006 U.S. Dist. LEXIS 24942, at *15 (W.D. Wash. Feb. 14, 2006) (ordering former employee to immediately return all company documents); *Clark v. Superior Court*, 196 Cal. App. 4th 37, 45 n.3 (2011) (affirming trial court order requiring the "return of all hard copies of 36 specified [attorney-client privileged] documents . . . and eras[ing] all electronic copies of those documents").

Second, concerning AnTerra's confidential business information, California law is clear that a trade secret includes any "information . . . that (1) derives independent economic value . . . from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Dahl v. Swift Distrib., Inc.*, 2010 U.S. Dist. LEXIS 35938, at *37 (C.D. Cal. Apr. 1, 2010) ("Misappropriation includes disclosure or use of a trade secret of another without express or implied consent."); *see also Dekar Indus., Inc. v. The Bisset-Berman Corp.*, 434 F.2d 1304, 1306 (9th Cir. 1970) (affirming preliminary injunction against former employees from "misuse of trade secrets by those who are bound by a confidential relationship"). California Civil Code § 3426.2 specifically authorizes preliminary injunctions to protect confidential business information, and California courts are especially careful to prevent unauthorized disclosures. *See American Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 638 (1989) (reversing trial court's denial of preliminary injunction against former employee's unauthorized use of plaintiff's "customer list and related [trade secret] information"); *see also Gable-Leigh, Inc. v. North Am. Miss*, 2001 U.S. Dist. LEXIS 25614, at *50-69 (C.D. Cal. Apr. 13, 2001) (granting preliminary injunction against continued use of proprietary customer list by former employee).

Although AnTerra has not taken any discovery yet to confirm exactly which attorney-client privileged communications and confidential business information Varley still has in his possession, Varley has admitted that he possesses improperly at least some of AnTerra's privileged and/or proprietary documents and information. In this circumstance, this Court should order Varley to at least return and/or destroy all such privileged or proprietary documents and information in his possession. In *Gable-Leigh*, for example, the court found that upon leaving her employment with plaintiff, an ex-employee retained and utilized plaintiff's confidential customer list in order to jump start a new business in direct competition with plaintiff. *Id.* at *8-9. The court found a likelihood of success on the merits because customer lists are trade secrets, even though plaintiff shared this information with multiple employees without insisting on any formal confidentiality agreements. *Id.* at *58-59.

The court found misappropriation through use of the customer information by the ex-employee for her own business advantage, despite knowing "that her duty to maintain the secrecy of Gable-Leigh's customer lists continued." *Id.* at *64; *see also Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007) ("[A]n employee, while employed, owes undivided loyalty to his employer. . . . California law does not authorize an employee to transfer his loyalty to a competitor.") (quoting *Fowler v. Varian Assoc., Inc.*, 196 Cal. App. 3d 34, 41 (1987)). The court found irreparable harm because of defendant's use of the trade secret information in direct competition with plaintiff, and hardships favoring plaintiff justified "enjoin[ing] defendants from doing business with those [customers] who have been wrongfully solicited, and from soliciting [those] whose names appear on Gable-Leigh's customer lists." *Id.* at *66-70 (also acknowledging the "strong public interest in favor of protecting trade secrets"). All of these same factors weigh similarly in AnTerra's favor in analogous circumstances here, which similarly justifies the requested preliminary injunction.

Further, the court in *Clark* specifically addressed the impropriety of an ex-employee retaining a former employer's privileged attorney-client communications. In first confirming the status of the retained documents as company-privileged, the court found that "substantial evidence [showed] the contested documents involved communications between a VeriSign [company] employee and a VeriSign attorney in the course of an attorney-client relationship." *Id.*, 196 Cal. App. 4th 37, at 49. As the court explained further:

> [T]here was substantial evidence to support the trial court's finding that *all* of the disputed communications . . . were privileged communications because VeriSign's declarations established all of the disputed communications involved an officer or employee of VeriSign transmitting a communication to an attorney for VeriSign . . . .
>
> [Further], the relevant inquiry is not the *content* of the communication but is instead the *relationship* of the communicators.

*Id.* at 51-52 (emphasis in original). Addressing counsel's role in the misuse of privileged documents, the court reasoned that because "the privileged documents that [counsel] Higgs retained (for over nine months) and excessively reviewed [raise] inevitable questions about the sources of Higgs' knowledge (even if Higgs in fact obtained such knowledge from legitimate sources) [and] could undermine the public trust and confidence in the integrity of the adjudicatory process." *Id.* at *55. For that reason, the court affirmed the trial court's decision to disqualify counsel.

The same reasoning applies here concerning the compelling reasons for both the requested preliminary injunction, and the requested disqualification of Varley's counsel from this action.

## IV. VARLEY SHOULD BE ENJOINED FROM ANY FURTHER INFRINGEMENT OF ANTERRA'S '143 PATENT-IN-SUIT

Another basis for granting the requested preliminary injunction is Varley's admission that he and the AnTerra customers he diverted are actively utilizing the newly-patented Genesis System. In patent cases, likely success on the merits requires that the patent-in-suit is likely (a) infringed, and (b) valid notwithstanding any challenge by the accused infringer. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Here, Varley must infringe and is infringing AnTerra's '143 patent by virtue of selling and servicing customers utilizing AnTerra's patented Genesis System. *See* Terranova Decl. ¶¶ 12-13. As Moreover, the '143 patent just issued a few weeks ago, and its validity has never been challenged. Therefore, AnTerra likely will succeed on the merits of its patent case.

The irreparable harm justifying preliminary injunctive relief comes in many forms, including (a) loss of market share, (b) price erosion, (c) reputational harm, and (d) difficulty in collecting damages from the defendant, as one court explained:

> Loss of market share and price erosion may be difficult to quantify and thus constitute irreparable harm. Further, the right to exclude others from a specific market, no matter how large or small that market, is an essential element of the patent right. . . . Courts have found that lost good will can indicate irreparable harm. Strained business relationships with third parties can also support a finding of irreparable harm. Further, courts have found irreparable harm if infringement indirectly encourages others to infringe the patent. . . . The Court agrees that the prospect of collecting money damages from a foreign

defendant with few to no assets in the United States tips in favor of a
finding of irreparable harm.

*Bushnell, Inc. v. The Brunton Co.*, 673 F. Supp. 2d 1241, 1262-63 (D. Kan. 2009)
(internal citations omitted) (granting patentee's motion for preliminary injunction);
*Robert Bosch, LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1156 (Fed. Cir. 2011)
(forward-looking damages a meaningless remedy if defendant has no ability to pay);
*see also Bushnell* at 1264-65 (balancing hardships by comparing "the irreparable
harm that would be sustained by the movant if a preliminary injunction were
erroneously denied with the irreparable harm that would be sustained by the non-
movant if a preliminary injunction were granted in error"); *Morris & Assoc., Inc. v.
Cooling & Applied Tech., Inc.*, 2010 U.S. Dist. LEXIS 111945, at *29 (E.D.N.C.
July 30, 2010) ("[T]he public interest is best served by enforcing patents that are
likely valid and infringed.") (quoting *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d
1331, 1348 (Fed. Cir. 2006)).

AnTerra faces all of the many forms of irreparable harm, as explained in the
Terranova Declaration.  First, AnTerra already is suffering loss of market share and
price erosion as a result of being undercut by Varley with the same customers
Varley was assisting AnTerra with before his departure.  Only because of his use of
privileged and confidential information, and his patent infringement, has Varley
been able to sell the Genesis System to these same customers for a lower price than
AnTerra offers, causing AnTerra to lose market share.  *See* Terranova Decl. ¶¶ 10-
14, Exs. 2-4.  AnTerra's reputation is harmed by not being in control of its own
patented Genesis System, or of its own customers, with whom AnTerra now has to
deal with very strained relationships because of Varley's unjust actions.  *See id.* ¶
12.  Others in this industry, which already has little respect for intellectual property,
are encouraged to ignore AnTerra's.  The fact that Varley is a one-man business
enabled only via theft of AnTerra's proprietary technology and trade secrets just
exacerbates the irreparable harm, because any damages likely would be

MEM. IN SUPPORT RE MOT. FOR PRELIM
INJUNCTION
Case No. SACV 13-734 JVS (ANx)

uncollectable.  Finally, the public interest applies equally to this case as to others—that is, the public has a strong interest in enforcing patents that are being actively infringed.

## V.  CONCLUSION

For each of the foregoing reasons, Plaintiff AnTerra respectfully requests that this Court issue the requested preliminary injunction to appropriately address and mitigate the irreparable harm being caused by Defendant Varley's actions of disclosing AnTerra's privileged attorney-client communications and confidential trade secrets, and by Varley's continued infringement of AnTerra's '143 patent-in-suit.

Respectfully submitted,

Dated:  May 24, 2013          **THE ECLIPSE GROUP LLP**

By:___/s/ Stephen M. Lobbin___
          Attorneys for Plaintiff
          **The AnTerra Group, Inc.**

# PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen (18) years and employed in the County of Orange, State of California.  I am employed in the office of THE ECLIPSE GROUP LLP, members of the Bar of the above entitled Court, and I made the service referred to below at their direction.  My business address is 2020 Main Street, Suite 600, Irvine, California 92614.

On May 24, 2012, I served the foregoing document:

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

☒ **VIA CM/ECF FILING SYSTEM.** The undersigned hereby certifies that she caused a copy of the foregoing document(s) to be filed with the clerk of the U.S. District Court, Central District of California, using the CM/ECF filing system, which caused a copy to be electronically mailed to the following CM/ECF Participant(s) noted below:

| | |
|---|---|
| Matthew C. McCartney<br>Eastman & McCartney<br>401 West A Street Suite 1785<br>San Diego, CA 92101 | |

I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 24, 2012, at Orange County, California.

/s/ Stephen M. Lobbin

# Exhibit 3

Stephen M. Lobbin (SBN 181195)
sml@eclipsegrp.com
Edward F. O'Connor (SBN 123398)
efo@eclipsegrp.com
**THE ECLIPSE GROUP LLP**
2020 Main Street, Suite 600
Irvine, California 92614
Tel: 949.851.5000
Fax: 949.851.5051

Attorneys for Plaintiff **The AnTerra Group, Inc.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| **The AnTerra Group, Inc.**, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>**KiVAR Chemical Technologies**, a California entity, and **Richard Varley**, an individual,<br><br>Defendants. | Case No. SACV 13-734 JVS (ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: August 19, 2013<br>Time: 1:30 p.m<br>Crtrm: 10C<br><br>Honorable James V. Selna |

      Pursuant to Local Rule (C.D. Cal.) 7-5(a), Plaintiff The AnTerra Group, Inc. ("AnTerra") respectfully submits this Memorandum of Points and Authorities in support of its Renewed Motion for Preliminary Injunction ("Renewed Motion").

## I.   INTRODUCTION AND BACKGROUND

      After the patent-in-suit issued on April 16, 2013, AnTerra filed its complaint in this action on May 8, 2013 against Defendants Richard Varley and his company

KiVAR Chemical Technologies (collectively "Varley"). *See* Docket No. 1. The complaint asserts causes of action for patent infringement, trade secret misappropriation, conversion, interference with prospective business advantage, breach of employee's fiduciary duty of loyalty, and unfair competition. *See id.* On May 24, 2013, AnTerra filed a preliminary injunction motion requesting, in part, that this Court order Varley to return several items of AnTerra's physical property—including a computer, documents and e-mails—of which Varley had no legal right to retain possession upon leaving AnTerra's employ in 2011. *See, e.g.*, Docket Nos. 7-8 and 14 at 3 n.3. In opposing AnTerra's motion on this ground, Varley cited no legal authority but instead argued that the computer was a "gift" and that because he had a hand in "creating" some of the documents and e-mails at issue, he believed they were his to keep upon leaving AnTerra's employment. *See* Docket No. 11 at 5 (arguing the "gift" excuse) and 17 (arguing the "created by Varley" excuse). In reply, AnTerra demonstrated Varley's two excuses to be without any factual or legal merit. *See* Docket No. 14 at 5-7.

This Court heard and decided AnTerra's motion on July 8, 2013, and the Court's minute order stated, in part:

> During the hearing on July 8, 2013, Plaintiff argued that Varley should have to return several of these items because they are owned by AnTerra. The Motion, however, was brought on attorney-client privilege, patent infringement, and trade secrets grounds. Plaintiff has made no showing under <u>Winter</u> on *conversion* grounds, and the Court will not grant an injunction on that basis.

*See* Docket No. 28 at 9 (emphasis in original). Because AnTerra believes that the undisputed facts and the law warrant the requested preliminary injunction on conversion grounds, AnTerra respectfully submits this Renewed Motion requesting that the Court order Varley to return several items of AnTerra's physical property—

including a computer, other equipment, videos, photographs, documents, and e-mails—all of which now remain illegally in Varley's possession.[1]

## II.  VARLEY HAS NO RIGHT TO RETAIN POSSESSION OF THE ANTERRA PROPERTY

Varley cannot and does not dispute that after eight years as an AnTerra employee, Varley chose to leave AnTerra's employ and while doing so, retained possession of many items of AnTerra property, including the following:

> 1—The Apple desktop computer system AnTerra had provided him for use while employed with the company (including documents, e-mails and other files stored on that computer);

> 2—Other AnTerra documents, e-mails and other files (paper and/or electronic), including a "Genesis ACO2© System Operations Manual;"

> 3—A pump and other equipment (including tools and hardware used to install the Genesis System);

> 4—A video showing an installation of AnTerra's Genesis System at customer True Leaf Farms; and

> 5—Photographs showing installations of AnTerra's Genesis System at customers True Leaf Farms, Earthbound Farms, Misionero and Boskovich.

*See* Terranova Decl. ¶ 3 (listing the stolen "AnTerra Property").  Soon after AnTerra discovered that Varley had taken some of the AnTerra Property, AnTerra notified Varley and demanded that he return the property.  *See* Docket No. 9-2 (AnTerra's letters filed as Exhibit 2 with original motion).  Without any discovery yet from Varley, the extent of Varley's theft is not yet certain; however, it is clear that Varley

---

[1]  Although AnTerra does not read this Court's July 8, 2013 Order as erecting a procedural or substantive roadblock to this Renewed Motion, if AnTerra is mistaken, AnTerra would withdraw this motion pursuant to Local Rule 7-16.

1  illegally retained many items of AnTerra Property.  The AnTerra Property Varley

2  illegally retained includes information useful to a competitor like Varley, and thus

3  damaging to AnTerra's business and competitive position.

4       At the time Varley departed, AnTerra already had generated some initial

5  success in demonstrating the Genesis System to several customers, including

6  Boskovich Farms of Oxnard, California, Misionero Vegetables of Gonzales,

7  California, True Leaf Farms of San Juan Bautista, California, and Gills Onions of

8  Oxnard, California.  Since that time, because Varley has been able to use the

9  AnTerra Property he illegally retained, Varley has been able to use and service the

10  same Genesis System and harm AnTerra's business by undercutting AnTerra and

11  taking away some of these customers, in particular Boskovich and Misionero.  *See*

12  Terranova Decl. ¶¶ 3-4.

13       As this Court discussed in its prior order, "In the Ninth Circuit, the *Winter*

14  factors [for preliminary injunctions] may be evaluated on a sliding scale."  *See*

15  Docket No. 28 at 3 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

16  1127, 1134-35 (9th Cir. 2011) and citing *Winter v. National Res. Def. Council, Inc.*,

17  555 U.S. 7, 20 (2008)).  Under the "sliding scale" approach, "the elements of the

18  preliminary injunction test are balanced, so that a stronger showing of one element

19  may offset a weaker showing of another."  *Alliance for the Wild Rockies* at 1131;

20  *see also Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011)

21  (preliminary injunction factors are likely success on the merits, likely irreparable

22  harm, equities favoring the movant, and public interest).

23       Clearly, AnTerra's conversion claim will likely succeed and it serves as a

24  proper ground for a preliminary injunction.  *See, e.g., Hal Wagner Studios, Inc. v.*

25  *Elliott*, 2009 U.S. Dist. LEXIS 12453, at *36-37 (S.D. Ill. Feb. 19, 2009) ("This

26  Court concludes that Wagner has satisfied its burden to obtain a preliminary

27  injunction to require Defendants to return any items of Wagner property that remain

28

MEM. IN SUPPORT RE RENEWED MOT. FOR
PRELIM INJUNCTION
Case No. SACV 13-734 JVS (ANx)

in their possession or come into their possession or control [as] Wagner is likely to succeed on the merits . . . ."); *see also Chopp Computer Corp. v. United States*, 5 F.3d 1344, 1347 (9th Cir. 1993) (California "permits recovery on a conversion theory either for the wrongful taking or for the wrongful retention of property"); Cal. Labor Code § 2860 ("Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."); *Southern Cal. Disinfecting Co. v. Lomkin*, 183 Cal. App. 2d 431, 446 (1960) (reasoning that defendant "could no more lawfully take [the documents and information] he did take than he could take the desk and chairs in the office of the plaintiff"). For all of the following undisputed reasons, this Court should issue a preliminary injunction that compels Varley to return all AnTerra Property immediately.

First, it is clear from Varley's pre-litigation letters and pleadings that Varley possesses AnTerra Property, and Varley admitted more recently that he took with him the following specific items: (a) "select copies of emails between himself and Terranova"; (b) emails "that related to the patent application, the underlying invention, or the litigation with Earthbound Farms"; and (c) the expensive Apple computer AnTerra had provided him. *See* Docket No. 11 at 5; Docket Nos. 10-1 (Exhibit 4) and 10-2 (Exhibit 5). All of these categories constitute theft of AnTerra Property. As the California Labor Code makes clear: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." Cal. Labor Code § 2860.

Second, Varley seems not to understand that his duties of loyalty and confidentiality to AnTerra (regardless of any formal "employment contract") extend beyond his period of employment. Varley is not allowed to retain possession of

AnTerra e-mails and documents just as he was not allowed to "double-deal" while still an AnTerra employee. Varley's misunderstanding of the law is not surprising given that he spent over a year before leaving AnTerra engaged in both double-dealing and setting up a competing business while still being paid his salary by AnTerra. *See* Docket No. 15-10 (July 15, 2010 e-mail from Varley undercutting AnTerra out of a nearly $60,000.00 sale); Docket No. 15-11 (Varley's June 2011 business plan for separating from AnTerra); Docket No. 15-12 (Varley's July 17, 2011 e-mail announcement of his separation from AnTerra).[2]

Moreover, AnTerra faces irreparable harm from Varley's continued competition, which has been enabled at least in part via Varley's illegal conversion of the AnTerra Property. AnTerra already is suffering loss of market share and price erosion as a result of being undercut by Varley with the same customers Varley was assisting AnTerra with before his departure. Varley has been able to sell the Genesis System to these same customers for a lower price than AnTerra offers, causing AnTerra to lose market share. *See* Terranova Decl. ¶ 4. AnTerra's reputation is harmed by not being in control of its own patented Genesis System, or of its own customers, with whom AnTerra now has to deal with very strained relationships because of Varley's unjust actions. *See id.* Others in this industry, which already has little respect for intellectual property, are encouraged to ignore AnTerra's. The fact that Varley is a one-man business enabled only via theft of AnTerra's property just exacerbates the irreparable harm, because any damages likely would be uncollectable. Finally, the equities and public interest support a preliminary injunction where deception, theft and double-dealing have been used to harm an employer (or former employer).

---

[2] Varley acknowledges that he took with him the Apple computer provided for his use while at AnTerra, but without any corroborating evidence he claims it was an expensive "gift" from AnTerra. *See* Docket No. 11 at 5. As the only actual, contemporaneous evidence explains, it was not a gift. *See* Docket No. 9-2.

## III. CONCLUSION

For each of the foregoing reasons, Plaintiff AnTerra respectfully requests that this Court issue the requested preliminary injunction to compel Varley to return the AnTerra Property immediately, in order to appropriately address and mitigate the irreparable harm being caused by Defendant Varley's actions.[3]

Respectfully submitted,

Dated: July 19, 2013                    **THE ECLIPSE GROUP LLP**


By:   /s/ Stephen M. Lobbin
    Attorneys for Plaintiff
    **The AnTerra Group, Inc.**

---

[3] As was discussed at the July 8, 2013 hearing, any item of AnTerra Property ordered returned that is properly discoverable would be produced during discovery by AnTerra. The issue of discoverability, of course, is a separate issue from lawful possession and whether conversion of physical property has occurred and should be remedied via a preliminary injunction.

**PROOF OF SERVICE**

I, the undersigned, declare and certify as follows:

I am over the age of eighteen (18) years and employed in the County of Orange, State of California. I am employed in the office of THE ECLIPSE GROUP LLP, members of the Bar of the above entitled Court, and I made the service referred to below at their direction. My business address is 2020 Main Street, Suite 600, Irvine, California 92614.

On July 19, 2013, I served the foregoing document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**

☒ **VIA CM/ECF FILING SYSTEM.** The undersigned hereby certifies that she caused a copy of the foregoing document(s) to be filed with the clerk of the U.S. District Court, Central District of California, using the CM/ECF filing system, which caused a copy to be electronically mailed to the following CM/ECF Participant(s) noted below:

| | |
|---|---|
| Matthew C. McCartney<br>Eastman & McCartney<br>401 West A Street Suite 1785<br>San Diego, CA 92101 | |

I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on July 19, 2013, at Orange County, California.

/s/ Stephen M. Lobbin

# Exhibit 4

1  Matt Olavi (Bar No. 265945)
2  molavi@olavidunne.com
   Brian J. Dunne (Bar No. 275689)
3  bdunne@olavidunne.com
4  **OLAVI DUNNE LLP**
   800 Wilshire Blvd., Suite 320
5  Los Angeles, California 90017
   Telephone:  (213) 516-7900
6  Facsimile:  (213) 516-7910
7
8
   *Attorneys for Defendant ECLIPSE IP LLC*
9
10            **UNITED STATES DISTRICT COURT**
11          **SOUTHERN DISTRICT OF CALIFORNIA**
12
13  THE ECLIPSE GROUP, LLP,           )  Case No. 3:13-cv-1902-JAH-BGS
14                                    )
                                      )
15         Plaintiff,                 )  **ECLIPSE IP LLC MEMORANDUM**
                                      )  **OF POINTS AND AUTHORITIES IN**
16      v.                            )  **SUPPORT OF ITS MOTION FOR**
                                      )  **SANCTIONS**
17  ECLIPSE IP LLC,                   )
                                      )  Date:           TBD
18                                    )  Time:           TBD
           Defendant.                 )  Courtroom:   13B
19                                    )  Judge:        Hon. John A. Houston
20                                    )  Complaint Filed:  August 15, 2013
                                      )
21                                    )  **TRIAL BY JURY DEMANDED**
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. BACKGROUND .............................................................................................1

III. LEGAL STANDARDS GOVERNING SANCTIONS ....................................3

    A.  Rule 11 ................................................................................................ 3

    B.  28 U.S.C. § 1927 ............................................................................... 4

    C.  The Court's Inherent Authority ......................................................... 5

IV. ARGUMENT ................................................................................................5

    A.  Sanctions Against Plaintiff and Its Attorneys Are Proper Under Federal Rule of Civil Procedure 11. ...................................................... 5

    B.  Sanctions Against Plaintiff's Attorneys Are Proper Under 28 U.S.C. § 1927. ................................................................................... 7

    C.  Federal Courts May Also Impose Sanctions For Bad Faith Acts ............ 8

    D.  The Appropriate Sanction Constitutes The Attorney Fees Relating to Opposing Defendant's Motion and in Bringing this Motion for Sanctions. .......................................................... 9

V. CONCLUSION ............................................................................................9

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

Cases

*B.K.B. v. Maui Police Dept.,*
   276 F.3d 1091 (9th Cir. 2002) ................................................................4

*Chambers v. NASCO, Inc.,*
   501 U.S. 32, 111 S.Ct. 2123, L. Ed. 2d 27 (1991) ............................5, 8

*Christian v. Mattel, Inc.,*
   286 F.3d 1118 (9th Cir. 2002) ...........................................................3, 4

*Cooter & Gell v. Haatmarx Cor.,*
   496 U.S. 284 (1990) ..........................................................................4, 5

*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001) .........................................................3, 4, 5

*Golden Eagle Distrib. Corp. v. Burroughs Corp.,*
   801 F.2d 1531 (9th Cir. 1986) ......................................................3, 5, 6

*J.C. and K.B. Investments, Inc. v. Wilson,*
   326 F.3d 1096 (9th Cir. 2003) ...............................................................4

*Lahiri v. Universal Music & Video Distribution Corp.,*
   606 F.3d 1216 (9th Cir. 2010) ...............................................................7

*Mark Indus., Ltd. v. Sea Captain's Choice, Inc.,*
   50 F.3d 730  (9th Cir. 1995) ..................................................................8

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ...............................................................................6

*Miller v. Los Angeles,*
   No. EDCV 07-806-AP, 2009 WL 1514653, *1 (C.D. Cal. May 28, 2009) ...........5

*Roadway Express, Inc. v. Piper,*
   447 US 752 (1980) ..................................................................................8

*Smith v. Ricks,*
   31 F.3d 1478 (9th Cir. 1994) .................................................................4

*Townsend v. Holman Consulting Corp.,*
   929 F.2d 1358 (9th Cir. 1990) ...............................................................5

*Townsend v. Holmen Consulting Corp.,*
   929 F.2d 1358 (9th Cir. 1990) ...............................................................7

*Warren v. Guelker,*
   29 F.3d 1386 (9th Cir. 1994) .................................................................4

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ...................................................................................6

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

*Zaldivar v. City of Los Angeles,*
   780 F.2d 823 (9th Cir. 1986) .......................................................................4, 5, 6

Statutes

28 U.S.C. Section 1927 ...............................................................................1, 4, 7, 9

Rules

Fed. R. Civ. Pro. 11(4) .................................................................................9

Federal Rules of Civil Procedure 11(b)(1, 2, 3) ..........................................4

Federal Rules of Civil Procedure 11(c) .......................................................4

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff recklessly and in bad faith filed a frivolous motion for a preliminary injunction ("the PI Motion") and caused Defendant Eclipse IP to expend substantial sums defending against what amounts to nothing more than a litany of frivolous claims.  Based on the extreme and frivolous nature of Plaintiff's and its counsel's conduct, it can be and should be sanctioned under 28 U.S.C. Section 1927 and the Court's inherent authority, in addition to the obvious Rule 11 violations.  Indeed, by filing a frivolous preliminary injunction motion, Plaintiff has unreasonably and vexatiously "multiplied proceedings" subjecting it to sanctions under 28 U.S.C. Section 1927.  Plaintiff's bad faith and unethical conduct also subjects it to monetary sanctions, plus costs and fees under this Court's inherent authority to regulate such conduct.

This Court should impose sanctions against Plaintiff to compensate Eclipse IP for the attorney's fees and expenses it has been forced to incur to date to defend against Plaintiff's frivolous preliminary injunction, to file the instant Motion, and to deter Plaintiff from engaging in such egregious misconduct in the future.  Accordingly, Eclipse IP files this motion for sanctions against Plaintiff and its counsel and requests that Plaintiff's counsel be ordered to pay sanctions for Eclipse IP's attorney's fees and other costs as this Court deems appropriate.

## II.    BACKGROUND

On August 15, 2013, The Eclipse Group filed the Complaint that initiated these proceedings.  D.E. 1.  In response, on November 7, 2013, Eclipse IP filed a Motion to Dismiss, pointing out a panoply of irreparable legal and factual deficiencies in all four of the Complaint's claims for relief.  D.E. 8.  In opposing that Motion to Dismiss, The Eclipse Group filed a meager two-page Opposition (composed mostly of section headings) that included no case citations and did nothing to rebut the plethora of factual and legal arguments offered by Eclipse IP's Motion.  D.E. 9.  The Court has not ruled on this Eclipse IP's Motion to Dismiss.

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

On March 27, 2014, The Eclipse Group filed this Motion for Preliminary Injunction ("the PI Motion") – almost three years after the alleged injuries began and almost one year after filing the Complaint in this action. *See* D.E. 12.   The PI Motion's Memorandum of Points and Authorities is one-and-a-half pages long.   It contains a single legal citation and no factual citations to the record.   It ignores the facts and the law and relies only on conclusory statements to demonstrate that The Eclipse Group is entitled to the relief requested.   Eclipse IP opposed this meritless Motion on May 16, 2014.   D.E. 14.

On March 27, immediately after receiving the PI Motion, Mr. Olavi, counsel for Eclipse IP, emailed Mr. O'Connor, a partner at The Eclipse Group and Chair of its Trial Group, to discuss the PI Motion.   Olavi Decl., Exh. 1 at p. 3.   The following day, March 28, 2014, after attempting to call Mr. O'Connor, Mr. Olavi sent him an email discussing the PI Motion and requesting that The Eclipse Group withdraw it.   Olavi Decl., Exh. 1 at p. 2.   In this email, Mr. Olavi explained that:

> "I have been through the Motion and the attached declarations and find absolutely no basis to support your requested relief.   Your discussion of the factors for granting a preliminary injunction and how those factors apply to this case is half a page long and doesn't contain any facts and includes a single legal citation to *Winter* (identifying the factors for a PI).   The Hamilton Declaration is nearly identical to the Declaration included in your Opposition to Eclipse's Motion to Dismiss, your Declaration simply attaches a number of random printouts from DocketNavigator and various websites, and neither even suggests that the Eclipse Group is entitled to the requested injunction.
>
> I think the PI Motion is baseless and that it was filed for an improper purpose – to harass Eclipse IP and to burden it by forcing it to respond to a meritless motion.   As a professional courtesy, I just wanted to let you know that if Eclipse IP is forced to respond, it presently intends to seek to recover the costs and fees incurred from yourself, Mr. Lobbin, Ms. Hamilton and/or your firm as a whole.   If you would like to discuss this further or explain the basis for your belief that the Eclipse

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

Group is entitled to the requested relief in greater detail, please let me know and I will make myself available.

*Id*. For almost two weeks, Mr. Olavi received no response. Olavi Decl., Exh. 1 at p. 1-2. Finally, On April 8, 2014, Mr. O'Connor sent a hostile, two-line email, focusing not on the basis for The Eclipse Group's PI Motion but on ad hominem attacks against Mr. Olavi, such as by incredulously asking whether Mr. Olavi had even attended law school. *Id*. Mr. Olavi immediately replied, reminded Mr. O'Connor of the basic tenets of Civil Procedure,[1] and again offered to discuss the PI Motion further "in a calm, professional way." *Id*. at Exh. 1 at p. 1. Mr. Olavi later had a professional and courteous conversation with Mr. O'Connor and Ms. Hamilton, managing partner at The Eclipse Group, regarding the PI Motion, but no resolution was reached.

## III.   LEGAL STANDARDS GOVERNING SANCTIONS

This Court may sanction parties or their attorneys for improper conduct under three primary sources of authority: Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent power. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

### A.   Rule 11

Rule 11 addresses papers filed with the Court. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). It aims to "'reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, ... [thereby] avoid[ing] delay and unnecessary expense in litigation.'" *Id.* at 1127 (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986)).

---

[1] That "parties may seek to recover costs and fees incurred in responding to frivolous motions that vexatiously multiply the proceedings under Rule 11, Section 1927, and/or the Court's inhterent authority…." Olavi Decl., Exh. 1 at p. 1.

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

Rule 11 of the Federal Rules of Civil Procedure "provides for the imposition of sanctions when a [pleading] is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994) (discussing motions).  By filing a pleading or motion, an attorney thus certifies that it is well grounded in fact and existing law (or a good faith argument for the extension of existing law) and that it is not filed for an improper purpose.  F.R.C.P. 11(b)(1, 2, 3) ; *Christian*, 286 F.3d at 1127.  The Court may sanction any attorney, law firm, or party responsible for violating this certification to the extent necessary "to deter repetition of the conduct or comparable conduct by others similarly situated."  F.R.C.P. 11(c). Absent exceptional circumstances, a law firm must be held jointly liable for a violation committed by its partner, associate, or employee.  F.R.C.P. 11(c)(1).

The Ninth Circuit has held that under Rule 11, the imposition of sanctions for either "frivolousness" or an "improper purpose" does not require a finding of subjective bad faith by the signer of the paper. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986), *overruled on other grounds, Cooter & Gell v. Haatmarx Cor.*, 496 U.S. 284 (1990).  Rather, the standard for determining whether conduct is sanctionable under Rule 11 is one of "objective reasonableness." *J.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109-10 (9th Cir. 2003).  An "empty-head, pure heart" defense therefore cannot defeat sanctions. *See Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994).

## B.    28 U.S.C. § 1927

Sanctions are available under 28 U.S.C. § 1927 when an attorney "multiplies the proceedings in any case unreasonably and vexatiously."  This Court may impose sanctions under § 1927 on a showing that an attorney knowingly or recklessly raised a frivolous argument. *See Fink v. Gomez*, 239 F.3d at 993-94; *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002).  This Court may award sanctions under

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

§ 1927 "for fees, costs, and expenses for unjustified claims."  *Miller v. Los Angeles*, No. EDCV 07-806-AP, 2009 WL 1514653, *1 (C.D. Cal. May 28, 2009).

### C.   The Court's Inherent Authority

Federal courts additionally have the inherent power to "vindicat[e] judicial authority" by awarding attorneys' fees caused when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123, L. Ed. 2d 27 (1991).  "This power reaches both conduct before the court and that beyond the court's confines."  *Id.* at 44.  It "extends to a full range of litigation abuses," as long as the Court makes a specific finding of "bad faith or conduct tantamount to bad faith."  *Id.* at 46; *Fink*, 239 F.3d at 994.

## IV.   ARGUMENT

Plaintiff and its attorneys frivolously, unreasonably, vexatiously, and in bad faith filed a baseless motion for a preliminary injunction against Eclipse IP. Accordingly, sanctions are appropriate under the standards of each of the three primary sources of sanctioning authority.

### A.   Sanctions Against Plaintiff and Its Attorneys Are Proper Under Federal Rule of Civil Procedure 11.

"[Ninth Circuit] cases have established that sanctions must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'"  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).  "Sanctions under Rule 11 are mandatory."  *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th Cir. 1986).

The subjective belief of Plaintiff or its attorneys with regard to the motion they filed is immaterial.  *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986) *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990).  Eclipse IP need only establish objectively, that a competent attorney admitted to practice before the district court

would understand that the preliminary injunction motion Plaintiff filed would be violative of Rule 11. *Id.* at 830; *Golden Eagle*, 801 F.2d at 1536. That is readily apparent in the instant case.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In fact, the Supreme Court has stated that a motion for preliminary injunction carries with it a "requirement for substantial proof" higher than even a motion for summary judgment. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). Here, The Eclipse Group filed a one-and-a-half page Motion for Preliminary Injunction that lays out the procedural history of the case, identifies the four factors that the moving party must establish by a clear showing to prevail on such a motion for preliminary injunction, then concludes, with no legal analysis, no factual analysis, and no evidence whatsoever that it is entitled to the relief requested. *See* D.E. 12-1. In fact, the Motion is so deficient that after identifying the four Winter factors for a preliminary injunction, it never again mentioned two of the factors, even though a preliminary injunction "may only be awarded upon a clear showing [on all four factors] that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Applying an objectively reasonable standard, the Motion was clearly both frivolous and brought for an improper purpose. The Eclipse Group is a law firm comprised of experienced litigators that has previously filed many motions seeking a preliminary injunction, including at least two which were filed last year by Messrs O'Connor and Lobbin, counsel of record in for The Eclipse Group in this case. *See, e.g.*, Olavi Decl., Exhs. 2 and 3. These preliminary injunction motions, filed on behalf of plaintiff AnTerra Group, Inc., are detailed and thorough. They include factual allegations and citations to the record. The motions identify the applicable law, apply the facts to the law, and draw reasoned conclusions, as any non-frivolous motion should. These motions reflect a non-frivolous attempt by competent counsel

1  to make a clear showing that the Anterra Group, Inc. was entitled to the requested

2  relief, and when compared to The Eclipse Group's PI Motion in this case, the

3  differences are shocking.

4      The Eclipse Group's present PI Motion contains no factual allegations and

5  lacks even a single citation to the record properly before the Court.  The PI Motion

6  lists the four *Winter* factors for granting a preliminary injunction, but does not state

7  the law applicable to any factor nor does it apply the (non-existent) facts to the law

8  in a way that would enable it or the Court to draw logical, reasoned conclusions.  It

9  doesn't even address two of the four **mandatory** factors, and it demonstrates The

10 Eclipse Group's genuine lack of concern for success on the merits.

11     The Eclipse Group knows what is necessary to prevail on a preliminary

12 injunction motion, but ignored those requirements here because it had absolutely no

13 intention of succeeding with the instant PI Motion.  This PI Motion is objectively

14 unreasonable, and unlike the motions in *Anterra*, was not designed not to secure

15 relief from the Court, but rather to frivolously, vexatiously, and in bad faith force

16 Eclipse IP to incur substantial costs in opposing it.  *See Townsend v. Holmen*

17 *Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) ("evidence bearing on

18 frivolousness or non-frivolousness will often be highly probative of purpose").

19     **B.     Sanctions Against Plaintiff's Attorneys Are Proper Under 28**

20             **U.S.C. § 1927.**

21     "Any attorney or other person admitted to conduct cases in any court of the

22 United States or any Territory thereof who so multiplies the proceedings in any case

23 unreasonably and vexatiously may be required by the court to satisfy personally the

24 excess costs, expenses, and attorneys' fees reasonably incurred because of such

25 conduct." 28 U.S.C. § 1927.

26     Although sanctions imposed under the Court's inherent authority require a

27 bad faith finding, recklessness suffices for § 1927 sanctions.  *Lahiri v. Universal*

28 *Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).  Here, the

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

1    violation is so obvious, that Plaintiff's attorneys were clearly reckless even if they
2    did not file the preliminary injunction motion in bad faith.

3    As described in the previous section and in Eclipse IP's Opposition to the PI
4    Motion, (D.E. 14), here, Plaintiff The Eclipse Group filed an unnecessary and
5    frivolous preliminary injunction motion with absolutely no chance of success.
6    Then, it unreasonably failed to respond to Eclipse IP's requests in the first instance
7    to drop the preliminary injunction given the absence of any evidentiary support for
8    such a motion.  Plaintiff's actions are the epitome of conduct that unreasonably and
9    vexatiously multiplied the proceedings.  Not only were the claims made in the PI
10   Motion meritless, but The Eclipse Group's refusal to respond in any fashion and its
11   refusal with withdraw an already baseless motion caused Eclipse IP to incur
12   significant costs responding to the frivolous allegations.

13   Thus, Plaintiff's attorneys at best recklessly filed the preliminary injunction
14   motion, and likely filed it for an improper purpose - to vexatiously multiply
15   litigation and to increase costs.  Accordingly, the Court should order Plaintiff's
16   attorneys to satisfy the excess costs, expenses, and attorneys' fees incurred as a
17   result of the filing of Plaintiff's preliminary injunction motion.

18   **C.   Federal Courts May Also Impose Sanctions For Bad Faith Acts**

19   Independent of the statutes discussed above, this Court also has inherent
20   power to impose certain sanctions, including an award of attorney fees for "bad
21   faith" conduct.  *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733
22   (9th Cir. 1995); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991).  This
23   includes situations where an attorney knowingly or recklessly raises a frivolous
24   argument, or abuses the judicial process, or acts vexatiously to harass an opponent,
25   or other conduct of the litigation.  *See Roadway Express, Inc. v. Piper*, 447 US 752,
26   766 (1980).  As discussed above, Plaintiff and its counsel filed for a preliminary
27   injunction in bad faith knowing there were no facts to support the drastic requested
28   relief against Eclipse IP, then refused to withdraw the motion.

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

**D.**   **The Appropriate Sanction Constitutes The Attorney Fees Relating to Opposing Defendant's Motion and in Bringing this Motion for Sanctions.**

Rule 11 states that a sanction under the rule, "if imposed on motion and warranted for effective deterrence [may include] an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.  Fed. R. Civ. Pro. 11(4).  28 U.S.C. §1927 states that an attorney who violates the Rule "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. §1927.

In addition to messenger fees, printing costs, and other miscellaneous expenses, counsel for Eclipse IP and its counsel have spent more than 60 hours defending against The Eclipse Group's bad faith, meritless PI Motion.  Counsel for Eclipse is prepared to offer his time entries to the Court *in camera* to document the expenses incurred and time spent.

**V.    CONCLUSION**

For the foregoing reasons, Defendant Eclipse IP respectfully requests that this Court grant its Motion for Sanctions and grant Eclipse IP costs and reasonable attorneys' fees for its defense of Plaintiff's frivolous preliminary injunction motion and for bringing the instant Motion.

Dated:  June 9, 2014                    Respectfully submitted,

OLAVI DUNNE LLP


By: _/s/ Matt Olavi_____

Matt Olavi
Attorneys for Defendant
ECLIPSE IP LLC

**ECLIPSE IP LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**

1
2

# PROOF OF SERVICE

3      I, Matt Olavi, declare as follows:

4      I am a citizen of the United States, employed in the County of Los Angeles,

5  State of California.  I am over the age of 18 and not a party to this action.  My

6  business address is: 800 Wilshire Blvd., Suite 320, Los Angeles, California 90017.

7      On June 9, 2014, I caused the following documents to be served:

8
9  • **ECLIPSE IP LLC NOTICE OF MOTION AND MOTION FOR SANCTIONS**

10 • **ECLIPSE IP LLC MEMORANDUM OF POINTS AND**
11 **AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS**

12
13 • **CERTIFICATE OF SERVICE**

14     [X]    by the court's electronic filing system.  I am familiar with the U.S.

15 District Court, Southern District of California's practice for collecting and

16 processing electronic filings.  Under the practice, documents are electronically filed

17 with the court.  The court's CM/ECF system will generate a Notice of Electronic

18 Filing (NEF) to the filing party, the assigned judge, and any registered users in this

19 case.  The NEF will constitute service of the document.  Registration as a CM/ECF

20 user constitutes consent to electronic service through the court's transmission

21 facilities.

22     I declare that I am a member of the Bar of this Court at whose direction the

23 service was made and declare under penalty of perjury under the laws of the State of

24 California that the above is true and correct.  Executed on May 23, 2014, at Los

25 Angeles, California.

26                         */s/ Matt Olavi*

27                         Matt Olavi

28                                    1            Case No. 3:13-cv-0352-JLS-NLS
                         **PROOF OF SERVICE**